**Mary E. SHEPARD and the Illinois State Rifle Association,**
Plaintiffs,

v.

**Lisa M. MADIGAN, solely in her official capacity as Attorney General of Illinois, Governor Patrick L. Quinn, solely in his official capacity as Governor of the State of Illinois, Tyler R. Edmonds, solely in his official capacity as the State's Attorney of Union County, Illinois, and Sheriff David Livesay, solely in his official capacity as Sheriff of Union County, Defendants.**

No. 11–CV–405–WDS.

United States District Court, S.D. Illinois.

March 30, 2012.

William N. Howard, Freeborn & Peters, Chicago, IL, for Plaintiffs.

Terence Corrigan, Karen L. McNaught, Illinois Attorney General's Office, Springfield, IL, David A. Simpson, Chicago, IL, Joseph A. Bleyer, Bleyer & Bleyer, Marion, IL, Jonathan Lee Diesenhaus, Hogan Lovells LLP, Washington, DC, for Defendants.

## MEMORANDUM AND ORDER

STIEHL, District Judge.

This case is before the Court on the issue of whether the State of Illinois' Unlawful Use of a Handgun and Aggravated Unlawful Use of a Handgun statutes violate the Second Amendment to the United States Constitution. Under current Illinois law citizens are prohibited from carrying loaded, operable firearms in public. *See*, 720 ILCS §§ 5/24–1(a)(4); 5/24–1(a)(10); 5/24–1.6(a)(1)-(3)(B).

Before the Court are several pending motions, including: plaintiffs' motion for preliminary injunction (Doc. 20) to which defendants have filed replies (Docs. 28, 29, 30); defendants' motions to dismiss the complaint (Docs. 24 and 26) to which plaintiffs have responded (Doc. 41); plaintiffs' motion for summary judgment (Doc. 38) to which defendants have responded (seeking to defer ruling—Docs. 47 and 49) and plaintiffs have filed a reply (Doc. 51); and, defendants' motion to cite supplemental authority (Doc. 55) which the Court **GRANTS.**

In addition, the Court has received, and reviewed, amicus briefs from The Brady Center to Prevent Gun Violence (Doc. 33) and the National Rifle Association of America, Inc. ("NRA") (Doc. 54), as well as other supplemental authority submitted by the parties.

## I. BACKGROUND

Plaintiffs, Mary E. Shepard, an Illinois resident, and the Illinois State Rifle Association, bring this action against various officials of the State of Illinois and Union County, Illinois, seeking to have the Court declare that three provisions of the Illinois criminal code which restrict individuals from carrying firearms for self-defense are unconstitutional in violation of the Second Amendment. Plaintiff Shepard is a

member of the Illinois State Rifle Association (her co-plaintiff), and she alleges that her Second Amendment rights and those of other Illinois citizens are being violated by Illinois law because, although she possesses a valid Illinois Firearms Owner Identification card (FOID), has completed training in the safe, lawful handling of handguns, and has received permits to carry handguns in Florida and Pennsylvania, she is not allowed to carry a concealed weapon for her protection in her home state of Illinois. Plaintiffs assert that the Illinois criminal statutes are facially invalid.[1]

Defendants are the Attorney General of Illinois, Lisa Madigan; the Governor of the State, Patrick J. Quinn; the State's Attorney for Union County, Illinois, Tyler Edmonds; and the Sheriff of Union County, David Livesay.[2] Notably Illinois is the only state remaining in the United States which does not have concealed carry laws.[3] The plaintiffs seek injunctive relief on their claims, and the defendants seek dismissal of the claims pursuant to Fed. R.Civ.P. 12(b)(6) for failure to state a claim.

Plaintiff Shepard asserts that in September of 2009 she was at her church doing her duties as treasurer when she was attacked and brutalized, beaten and left for dead. She suffered skull fractures, fractures to both cheeks, brain swelling, shattered teeth, a concussion, loss of hearing, damage to her vertebrae, torn rotator cuffs, and an injured clavicle. The complaint alleges that she has been required to undergo numerous surgeries, including extensive reconstruction to her shoulders, has had to have physical therapy, was unable to drive for many months and has severe and lasting injuries to her face, head and body. Shepard was unarmed at the time of the attack, and asserts that if she had had the right to have been armed, she could have protected herself and her 83 year old coworker who also was injured. Because she was restricted by Illinois law from the ability to carry a firearm in public, she asserts that she was defenseless then, and remains defenseless when in public. Further, she states that if she were allowed, under Illinois law, she would now carry a loaded and accessible weapon in her car and/or on her person for self-defense purposes.

## II. CLAIMS AND MOTIONS

### A. Summary of the Issues Before the Court

The plaintiffs have previously informed the Court that the factual issues are limited and they seek to proceed on the pleadings, and do not require a hearing on their motion for preliminary injunction. The Court will therefore, consider the issues raised in the plaintiffs' request for injunctive relief and defendants' motions to dismiss collectively as the issues are basically identical and can be resolved together.

The Second Amendment to the United States Constitution provides: "A well reg-

---

1. There is currently no federal statute or Supreme Court case directly addressing the issue of the constitutionality of conceal carry permits. As of the date of this Order, 49 states have passed laws, of varying degree, allowing their citizens to carry certain concealed firearms. Like Illinois, the District of Columbia also does not allow conceal carry firearms possession.

2. In this action defendants Madigan, Quinn and Edmonds are represented by the Attorney General of the State of Illinois. Defendant Livesay is represented by private counsel. Defendants have filed nearly identical motions and briefs. Therefore, for purposes of simplicity, the Court will refer to them collectively as "defendants" throughout this Order.

3. See, listing on www.usacarry.com for current conceal carry reciprocity data.

ulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend II. The two sides in this action set forth differing views of the application of the Second Amendment to the validity of the current Illinois statutes. Plaintiffs assert that their Second Amendment rights are being violated by the Illinois statute because licensed handgun owners are prohibited from carrying a firearm in public. The defendants assert that the plaintiffs currently have the right to use firearms for their self-protection when in their home, or on their land or fixed place of business, or when on the land or legal dwelling of another as an invitee for their self protection.

But, the State of Illinois does not permit plaintiffs or any state citizens to carry those firearms in public. The State asserts that the overriding need to protect the public by limiting an individual's ability to have ready a gun of which the public may be unaware is part of the state of Illinois' rights, and that the statutes are in compliance with the Second Amendments' protections. Plaintiffs counter that they are not challenging the right of the State to issue permits for possessing firearms, and that the relief they seek, to have this Court strike down Illinois' public carriage ban, will have no effect on those who may legally possess a firearm in the State. They assert it poses a relatively low risk of the misuse of guns if the law were to be declared unconstitutional, and would guarantee plaintiffs' Second Amendment right to self-protection.

In an amicus brief filed with the Court, The Brady Center to Prevent Gun Violence asserts that this Court should find that the Illinois statutes in issue do not implicate protected Second Amendment freedoms because they do not have any impact on the right of Illinois citizens to bear arms in their homes. Further, that the Court should determine that the recent Supreme Court decisions of *District of Columbia v. Heller,* 554 U.S. 570, 128 S.Ct. 2783, 171 L.Ed.2d 637 (2008) and *McDonald v. City of Chicago,* —— U.S. ——, 130 S.Ct. 3020, 177 L.Ed.2d 894 (2010), do not extend the protected Second Amendment rights to include an absolute right to carry firearms when in public. In addition, the Brady Center encourages this Court to adhere to the long-recognized principle of judicial restraint, and not read into the *Heller* and *McDonald* decisions the constitutional right to carry guns in public.

The NRA, in its amicus brief, asserts that armed self-defense is a constitutional right protected by the Second Amendment as evidenced by the fact that it is now available in 49 of the 50 states. Only the State of Illinois outlaws the right to carry a firearm, with a permit, in public. Further, the NRA asserts that the promoted activity, carrying and use of firearms by law-abiding citizens, is an effective means of self-defense, is not a threat to public safety and may result in a decrease, not an increase in crime rates.

## B. Jurisdiction, Venue, and Standing in this Cause of Action

Plaintiffs' complaint involves claimed violations of Second Amendment rights, thereby giving this Court subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331. The plaintiff, Shepard, is a resident of Union County, which is within the Southern District of Illinois. The plaintiff Illinois State Rifle Association (ISRA) is a not-for-profit association incorporated in Illinois, with members residing throughout the State of Illinois. Plaintiff Shepard is a member of the ISRA. With respect to standing, plaintiffs claim that they will suffer "an actual or impending injury" and that a decision by this Court in their favor would "redress the injury."

*Ezell v. City of Chicago,* 651 F.3d 684, 695 (7th Cir.2011). The Court, therefore, **FINDS** that plaintiffs have standing to bring this action, and this Court has subject matter jurisdiction to hear and resolve these claims.[4]

### C. Challenged Illinois Statutes

The Illinois state statutes which are at issue in this action provide, in pertinent part, as follows: 720 ILCS 5/24–1 (Unlawful Use of a Weapon—UUW):

(a) A person commits the offense of unlawful use of weapons when he knowingly:

\* \* \* \* \* \*

(4) Carries or possesses in any vehicle or concealed on or about his person except when on his land or in his own abode, legal dwelling, or fixed place of business, or on the land or in the legal dwelling of another person as an invitee with that person's permission, any pistol, revolver, stun gun or taser or other firearm, except that this subsection (a)(4) does not apply to or affect transportation of weapons that meet one of the following conditions:

(i) are broken down in a non-functioning state; or

(ii) are not immediately accessible; or

(iii) are unloaded and enclosed in a case, firearm carrying box, shipping box, or other container by a person who has been issued a currently valid Firearm Owner's Identification Card.

720 ILCS 5/24–1(a)(10), further provides:

(a) A person commits the offense of unlawful use of weapons when he knowingly:

\* \* \* \* \* \*

(10) Carries or possesses on or about his person, upon any public street, alley, or other public lands within the corporate limits of a city, village or incorporated town, except when an invitee thereon or therein, for the purpose of the display of such weapon or the lawful commerce in weapons, or except when on his land or in his own abode, legal dwelling, or fixed place of business, or on the land or in the legal dwelling of another person as an invitee with that person's permission, any pistol, revolver, stun gun or taser or other firearm, except that this subsection (a)(10) does not apply to or affect transportation of weapons that meet one of the following conditions:

(i) are broken down in a non-functioning state; or

(ii) are not immediately accessible; or

(iii) are unloaded and enclosed in a case, firearm carrying box, shipping box, or other container by a person who has been issued a currently valid Firearm Owner's Identification Card.

And, finally, 720 ILCS 5/24–1.6(a)(1)-(3)(B) (Aggravated Unlawful Use of a Weapon–AUUW), provides:

(a) A person commits the offense of aggravated unlawful use of a weapon when he or she knowingly:

(1) Carries on or about his or her person or in any vehicle or concealed on or about his or her person except when on his or her land or in his or her abode, legal dwelling, or fixed place of business, or on the

---

**4.** The Court notes that the defendants have not challenged the standing of plaintiffs to bring this cause of action.

land or in the legal dwelling of another person as an invitee with that person's permission, any pistol, revolver, stun gun or taser or other firearm; or,

(2) Carries or possesses on or about his or her person, upon any public street, alley, or other public lands within the corporate limits of a city, village or incorporated town, except when an invitee thereon or therein, for the purpose of the display of such weapon or the lawful commerce in weapons, or except when on his or her own land or in his or her own abode, legal dwelling, or fixed place of business, or on the land or in the legal dwelling of another person as an invitee with that person's permission, any pistol, revolver, stun gun or taser or other firearm; and

(3) One of the following factors is present:

(A) the firearm possessed was uncased, loaded and immediately accessible at the time of the offense; or,

(B) the firearm possessed was uncased, unloaded and the ammunition for the weapon was immediately accessible at the time of the offense. . . .

### D. Motions to Dismiss

 Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted. When considering a Rule 12(b)(6) motion, the Court's role is limited to determining if a plaintiff is entitled to offer evidence in support of the asserted claims. See, *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). The Court does not consider whether a plaintiff will ultimately prevail.

*Id.* "A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a). The statement required by Rule 8(a)(2) must give the defendant "fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) (per curiam). Detailed factual allegations are not required. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). But, merely conclusory statements, alone, are not sufficient. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1950, 173 L.Ed.2d 868 (2009). A complaint must provide "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 129 S.Ct. at 1949 (quoting *Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955). Upon review the Court will construe the complaint "in the light most favorable to the plaintiff, accepting as true all well-pleaded facts alleged, and drawing all possible inferences in plaintiff's favor." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081(7th Cir.2008) (citing *Killingsworth v. HSBC Bank Nev.*, 507 F.3d 614, 618 (7th Cir.2007)). Dismissal is appropriate if, accepting as true all the facts alleged in the complaint, a plaintiff has not pleaded "enough facts to state a claim to relief that is plausible on its face," *Twombly*, 550 U.S. at 570, 127 S.Ct. 1955. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 129 S.Ct. at 1950.

In order to withstand a motion to dismiss plaintiffs must show that they have a cognizable claim, and further, to succeed on a preliminary injunction, plaintiffs

would have to establish that they have "a claim plausible enough that ... the entry of a preliminary injunction would be the appropriate step." *Michigan v. U.S. Army Corps of Engineers,* 667 F.3d 765 (7th Cir.2011); *see also, Ezell,* 651 F.3d at 693.

### 1. Motion to Dismiss of Defendants Madigan, Quinn and Edmonds (Doc. 26)

Defendants Madigan, Quinn and Edmonds seek dismissal of plaintiffs' complaint on the following grounds: that Governor Quinn is not a proper party to the action; that the challenged Illinois statutes do not infringe on plaintiffs' rights to bear arms because the Second Amendment does not include a right to carry concealed weapons; and, the scope of the Second Amendment does not extend to carrying weapons outside of the home. The Court notes that plaintiffs do not address the issue of whether Governor Quinn is a proper party to this action, but assert that as to all named defendants, the Illinois statutes which ban carrying firearms in public is unconstitutional both on their face and in their application and that carrying firearms in public is a core Second Amendment right.

### 2. Defendant Livesay's Motion to Dismiss (Doc. 24)

Defendant Livesay seeks dismissal of the claims against him on the grounds that plaintiffs' claims against him are barred by the Eleventh Amendment, that plaintiffs cannot seek money damages against him, which violates the provisions of *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), and plaintiffs' only claim against him is that he was enforcing a valid state statute.

In response, plaintiffs assert that the relief that they seek against Livesay is injunctive relief, not money damages, and further, the state statutes which Livesay has enforced are unconstitutional, and

therefore their claims against him survive a motion to dismiss on the grounds raised.

### E. Preliminary Injunction Standards

■■■ To succeed on a preliminary injunction in the Seventh Circuit, a moving party must establish "that it has (1) no adequate remedy at law and will suffer irreparable harm if a preliminary injunction is denied and (2) some likelihood of success on the merits." *Ezell,* 651 F.3d at 694. Further, if the moving party "meets these threshold requirements, the district court weighs the factors against one another, assessing whether the balance of harms favors the moving party or whether the harm to the nonmoving party or the public is sufficiently weighty that the injunction should be denied." *Ezell,* 651 F.3d at 694, (citing *Christian Legal Soc'y v. Walker,* 453 F.3d 853, 859 (7th Cir.2006)).

### 1. Plaintiffs' Motion for Preliminary Injunction (Doc. 20)

In their motion for preliminary injunction, the plaintiffs assert that they are entitled to injunctive relief because the State of Illinois' ban on carrying a firearm violates their Second Amendment rights every day that it remains in effect. Defendant Livesay adopts his codefendants' response that plaintiffs are not entitled to a preliminary injunction because they cannot meet the threshold requirements to show that they have a likelihood of success on the merits because there is no "core" Second Amendment right to carry weapons in public for personal defense.

### III. ANALYSIS
#### A. Constitutional Review

■■ Plaintiffs' claim is based upon their asserted rights under the Second Amendment to bear arms. The Supreme Court has recently discussed the issue of possession of firearms and the rights of individuals to keep and bear arms for self-defense, particularly in the home. *See, District of*

*Columbia v. Heller,* 554 U.S. 570, 592–95, 128 S.Ct. 2783, 171 L.Ed.2d 637 (2008) and *McDonald v. City of Chicago,* —— U.S. ——, 130 S.Ct. 3020, 177 L.Ed.2d 894 (2010). In *Heller,* the Court considered the validity of District of Columbia gun control statutes, which "generally prohibit[ed] the possession of handguns," making it a crime to carry an unregistered firearm, but, at the same time, prohibiting the registration of handguns. 554 U.S. at 574, 128 S.Ct. 2783. The Court determined that the "Second Amendment is naturally divided into two parts: its prefatory clause and its operative clause." *Id.* at 577, 128 S.Ct. 2783. The operative clause, the "right of the people" clause, was determined by the Court to be a "right that is exercised individually and belongs to all Americans." *Id.* at 581, 128 S.Ct. 2783. The "keep and bear arms" clause means "simply the carrying of arms," and was not limited in the *Heller* decision to military use. *Id.* at 589, 128 S.Ct. 2783. Therefore, the Court found that the operative clause acted to "guarantee the individual right to possess and carry weapons in case of confrontation." *Id.* at 592, 128 S.Ct. 2783. The prefatory clause, "A well regulated Militia, being necessary to the security of a free State ..." was determined by the Court to have referred to males "physically capable of acting in concert for the common defense." *Id.* at 595, 128 S.Ct. 2783 (quoting *United States v. Miller,* 307 U.S. 174, 179, 59 S.Ct. 816, 83 L.Ed. 1206 (1939)). The Court determined that "security of a free state" includes the use of a militia "in repelling invasion and suppressing insurrections," rendering "large standing armies unnecessary" and "when able-bodied men of a nation are trained in arms and organized, they are better able to resist tyranny." 554 U.S. at 597–98, 128 S.Ct. 2783. Therefore, the Court determined that the "prefatory clause an-

nounces the purpose for which the right was codified: to prevent elimination of the militia." *Id.* at 599, 128 S.Ct. 2783.

In *Heller* the Court undertook a lengthy review of the historical foundation of the language of the Amendment and application throughout United States history, and determined that although the Second Amendment "guarantee[s] the individual right to possess and carry weapons in case of confrontation," *id.* at 592, 128 S.Ct. 2783, this right is not "unlimited." *Id.* at 626, 128 S.Ct. 2783. That is, "the right was not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." *Id.*

The Court stated that the "inherent right of self-defense has been central to the Second Amendment right." *Id.* at 628, 128 S.Ct. 2783. And, handguns are "the most preferred firearm in the nation to 'keep' and use for the protection of one's home and family." *Id.* at 628–29, 128 S.Ct. 2783. The Court determined that the District of Columbia prohibition on handgun possession *in the home* violated the Second Amendment, and also determined that the "prohibition against rendering any lawful firearm in the home operable for the purpose of immediate self-defense" was also unconstitutional. *Id.* at 635, 128 S.Ct. 2783.

In *Ezell,* the Seventh Circuit applied the decisions in *Heller* and *McDonald* to a challenge to a City of Chicago ordinance. As *Ezell* noted, *Heller* determined that the Second Amendment "secures a pre-existing natural right to keep and bear arms; that the right is personal and not limited to militia service; and that the 'central component of the right' is the right of armed self-defense, most notably in the home." *Ezell,* 651 F.3d at 700–01 (quoting *Heller,* 554 U.S. at 595, 599–600, 128 S.Ct. 2783). The Seventh Circuit[5] further rec-

---

5. *Ezell* involved a post-*Heller* challenge by

residents of the City of Chicago where the

ognized that the Supreme Court did not set out any "doctrinal 'test' for resolving future" Second Amendment claims. 651 F.3d at 701.[6]

In *McDonald*, the Court determined that the *Heller* decision applied to the States under the Fourteenth Amendment, but did not address the issue raised by the plaintiffs in this case, i.e. whether the right to bear arms extends beyond the home. 130 S.Ct. at 3050. *McDonald* left in place the previous decision in *Heller* that, "nothing in our opinion should be taken to cause doubt on longstanding prohibitions on ... laws forbidding the carrying of firearms in sensitive places such as schools and government buildings ..." 554 U.S. at 626–27, 128 S.Ct. 2783, and the list of "presumptively lawful regulatory measures" was not exhaustive. *Id.* at 627 n. 26, 128 S.Ct. 2783.

In *McDonald*, the Court stated, "Constitutional rights are enshrined with the scope they were understood to have when the people adopted them, whether or not future legislatures or (yes) judges think that scope is too broad." 130 S.Ct. at 3047. Further, "the scope of the Second Amendment right is determined by textual and historical inquiry, not interest-balancing." *Id.* Therefore, the Court must determine, in a state-statute context, "how the right was understood when the Fourteenth Amendment was ratified." *Ezell*, 651 F.3d at 702.

## B. Constitutionality of Illinois Statutes

### 1. Founding Era History of the Right to Bear Arms

The Court's review of relevant history is such that the Court cannot find that history supports plaintiffs' claim that the Second Amendment *necessarily* extends the right to bear arms to the unfettered right to carry weapons in public.[7] As the Supreme Court noted in *Heller*, 554 U.S. at 599, 128 S.Ct. 2783, the "Second Amendment was not intended to lay down a novel principle, but rather codified a right inherited from our English ancestors." Further, "it has always been widely understood that the Second Amendment, like the First and Fourth Amendments, codified a *preexisting* right" from English law. *Id.* at 592, 128 S.Ct. 2783.

Although *Heller* reviewed the historical underpinnings of the Second Amendment and found that this included the right to bear arms within the home, it simply did

City of Chicago lifted its ban on handgun possession, but imposed a "Responsible Gun Owners Ordinance" which required one hour of firearm range training to receive a permit for gun ownership in the City. At the same time, the City prohibited all firing ranges within City limits. 651 F.3d at 689–90. The Seventh Circuit held that plaintiffs were entitled to a preliminary injunction on the firing-range ban. *Id.* at 690.

**6.** The *Ezell* decision noted that "the Court was not explicit about how Second Amendment challenges should be adjudicated now that the historic debate about the Amendment's status as an individual-rights guarantee has been settled." 651 F.3d at 701.

**7.** In undertaking this review, the Court has considered decisions of courts which have preceded this Court's inquiry and analysis on the issue of the application of the *Heller* decision to Second Amendment challenges outside of the home. Most notably, this Court finds the logic and analysis of the Central District of Illinois, on basically identical issues to those raised here, to be persuasive and adopts, but does not repeat, that court's review of the historical approach to the issue of the Second Amendment rights raised here. *See, Moore v. Madigan*, 842 F.Supp.2d 1092, 1099–1101, No. 11–3134, 2012 WL 344760, at *5 (C.D.Ill. Feb. 3, 2012). In addition, the Court finds instructive, the summary in *Moore* of other courts which have considered and rejected attempts to expand the decision in *Heller* to the right to bear arms outside of the home. *Id.* at *7 (collecting cases).

not go so far as to require the extension of those protected Second Amendment rights to include the vast area outside the home. As the Fourth Circuit stated in a post-*Heller* review, *Heller* creates a "dilemma faced by lower courts in the post-*Heller* world: how far to push *Heller* beyond its undisputed core holding[?]" 638 F.3d at 475 (Wilkerson, writing for the court as to Part III B). Further:

> There may or may not be a Second Amendment right in some places beyond the home, but we have no idea what those places are, what the criteria for selecting them should be, what sliding scales of scrutiny might apply to them, or any one of a number of other questions. It is not clear in what places public authorities may ban firearms altogether without shouldering the burdens of litigation. The notion that "self-defense has to take place wherever [a] person happens to be," Eugene Volokh, Implementing the Right to Keep and Bear Arms for Self–Defense: An Analytical Framework and a Research Agenda, 56 UCLA L.Rev. 1443, 1515 (2009), appears to us to portend all sorts of litigation over schools, airports, parks, public thoroughfares, and various additional government facilities. And even that may not address the place of any right in a private facility where a public officer effects an arrest. The whole matter strikes us as a vast *terra incognita* that courts should enter only upon necessity and only then by small degree.

638 F.3d at 475.

██ As *Ezell* stated the "threshold inquiry in some Second Amendment cases will be a 'scope' question: Is the restricted activity protected by the Second Amendment in the first place?" 651 F.3d at 701. In making this inquiry, *Ezell* noted that, "*Heller* suggests that some federal gun laws will survive Second Amendment challenge because they regulate activity falling outside the terms of the right as publicly understood when the Bill of Rights was ratified." 651 F.3d at 702. Further, "if the government can establish that a challenged firearms law regulates activity falling outside the scope of the Second Amendment right as it was understood at the relevant historical moment . . . then the analysis can stop there; the regulated activity is categorically unprotected, and the law is not subject to further Second Amendment review." *Id.* at 702–03. Further,

> Deciding whether the government has transgressed the limits imposed by the Second Amendment—that is, whether it has "infringed" the right to keep and bear arms—requires the court to evaluate the regulatory means the government has chosen and the public-benefits end it seeks to achieve. Borrowing from the Court's First Amendment doctrine, the rigor of this judicial review will depend on how close the law comes to the core of the Second Amendment right and the severity of the law's burden on the right. See generally, Volokh, Implementing the Right to Keep and Bear Arms for Self–Defense, 56 UCLA L.Rev. at 1454–72 (explaining the scope, burden, and danger-reduction justifications for firearm regulations post-Heller); Nelson Lund, The Second Amendment, Heller, and Originalist Jurisprudence, 56 UCLA L.Rev. 1343, 1372–75 (2009); Adam Winkler, Heller's Catch–22, 56 UCLA L.Rev. 1551, 1571–73 (2009); *Lawrence B. Solum, District of Columbia v. Heller and Originalism,* 103 Nw. U.L.Rev. 923, 979–80 (2009); Glenn H. Reynolds & Brannon P. Denning, Heller's Future in the Lower Courts, 102 Nw. U.L.Rev.2035, 2042–44 (2008).

### 2. Review Standard

██ When considering a law which is challenged on constitutional grounds, there

are three possible levels of scrutiny: rational basis, intermediate level and strict scrutiny. *Heller* and *McDonald* did not specify the level of scrutiny to apply to laws that impact the right to bear arms *outside* the home. However, the Seventh Circuit has determined that intermediate scrutiny would apply. See, *Ezell*, 651 F.3d at 703–04 (collecting cases applying intermediate standard in the Third, Fourth, and Tenth Circuits). In the case before this Court, plaintiffs have, under the Illinois laws they challenge, the right to bear arms in their homes, the very right recognized as protected under the Second Amendment by *Heller* and its progeny.

Viewing the Second Amendment claim raised by plaintiffs, to carry the firearms in public for the purpose of general self-defense, through the intermediate scrutiny lens, the Court is aware that the state must establish that there is a reasonable fit between the statute and its restrictions and a substantial governmental interest. The Court notes that in making this review, it is aware that in cases involving federal statutes making it unlawful for a person who has a prior conviction to carry a firearm, 18 U.S.C. § 922(g), the Seventh Circuit has upheld the statute's constitutionality under a *Heller* challenge. *See, e.g. United States v. Skoien*, 614 F.3d 638 (7th Cir.2010) (where the court upholding the federal statute challenged by a defendant in a criminal action who had been indicted for possessing a firearm, after a misdemeanor conviction pursuant to 18 U.S.C. § 922(g), recognized that the goal of the statute, to prevent "armed mayhem" was "an important governmental objective." 614 F.3d at 642.)

The defendants assert that the State of Illinois has significant governmental interests in protecting the safety of the public by restricting the availability and use of handguns in public. The Supreme Court has previously recognized that under inter-mediate scrutiny cases, the government's interest need not be compelling. *Schenck v. Pro–Choice Network*, 519 U.S. 357, 376, 117 S.Ct. 855, 137 L.Ed.2d 1 (1997). As the Fourth Circuit noted in *United States v. Masciandaro*, 638 F.3d 458, 473 (4th Cir.2011), "[l]oaded firearms are surely more dangerous than unloaded firearms, as they could fire accidentally or be fired before a potential victim has the opportunity to flee." The State of Illinois has determined that, for purposes of protection of its residents, a citizen's interest in carrying a firearm in public should be subject to the governmental interest in safeguarding the welfare of the public at large from the inherent dangers in a loaded firearm. This Court **FINDS** that the state has, therefore, established a substantial interest in the regulations at issue.

Under the Supreme Court's holding in *United States v. Salerno*, 481 U.S. 739, 745, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987) when reviewing a constitutional challenge, a law is not facially unconstitutional unless plaintiffs can show that they have raised a cognizable Second Amendment claim. The issue, post-*Heller*, is whether the right of citizens to bear arms for "self-defense" should be construed to include concealed carry and should be considered to fall with "scope" determination. If the Court determines that the activity is *not* within that scope, then the Court's inquiry is over. 651 F.3d at 702–03.

*Heller* and *McDonald* recognized that the " 'central component' of the Second Amendment is the right to keep and bear arms for defense of self, family and home." 651 F.3d at 704. As *Heller* noted, from Blackstone through the Nineteenth Century cases, courts which considered the issue noted that the right was not intended to cover "a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." 554 U.S. at

626, 128 S.Ct. 2783. The holding in *Heller* is narrow, and limited to the possession of firearms in one's home for the purpose of self-defense. As the Seventh Circuit noted in *Skoien,* "[c]ategorical limits on the possession of firearms would not be a constitutional anomaly. Think of the First Amendment, which has long had categorical limits: obscenity, defamation, incitement to crime, and others." 614 F.3d at 641 (reviewing First Amendment cases).

The rights recognized in *Heller*—to possess a firearm for self-defense *in the home*—are rights which plaintiffs currently enjoy in Illinois. The plaintiffs do not assert that the statutes at issue limit their right to *have* a firearm, if they can meet permit requirements,[8] but rather, that the statutes limit their ability to carry that firearm, loaded, outside the home for self-protection. *Heller* specifically affirmed the government's power to regulate the use of firearms outside the home. 554 U.S. at 626–27, 128 S.Ct. 2783. Therefore, this Court is persuaded that neither *Heller* nor *McDonald,* requires the State of Illinois to extend the right to possess and carry a firearm to the area outside the home. *Heller* clearly speaks of the need to defend "hearth and home" but does not go beyond that area in recognizing Second Amendment protections. 554 U.S. at 635, 128 S.Ct. 2783.

Finally, the Court notes that the *Ezell* decision is completely in harmony with this finding. In *Ezell* the Seventh Circuit was concerned with a city-wide ban on firearm ranges which had the impact of limiting potential firearm permit applicants from effectively protecting their homes because they could not, "acquire and maintain proficiency in [their firearm] use." 651 F.3d at 704.

---

8. Of course, this is not a case where the plaintiffs have challenged a permit require-

## IV. CONCLUSION

Accordingly, the Court **FINDS** that the plaintiffs' claim that the provisions of the State of Illinois' Unlawful Use of a Handgun and Aggravated Unlawful Use of a Handgun statutes do not violate the Second Amendment to the United States Constitution because the bearing of a firearm outside the home is not a core right protected by the Second Amendment.

Therefore, the Court **GRANTS** defendants' motions to dismiss pursuant to Fed. R.Civ.P. 12(b)(6) for failure to state a claim, and plaintiffs' complaint is **DISMISSED.** The Court **GRANTS** defendants' motion to cite supplemental authority (Doc. 55). All remaining motions are **DENIED** as moot.

**IT IS SO ORDERED.**

